143135 Wilson v. DHS. Mr. Dessa, whenever you're ready. May it please the court, my name is Robert Dessa, representing the petitioner Tina Wilson. The crux of this case is a failure to communicate. Whenever an agency is going to take adverse action against an employee, the agency has to communicate three things to the employee. First, the agency has to communicate the conduct, misconduct that the agency believes that the employee committed and that's usually done in the charges. Second, the agency has to communicate the evidence that it will rely upon to prove the misconduct and that is the specifications, the specific facts which support the alleged misconduct. Then, the third thing is that the agency must communicate to the employee any information that the agency intends to use or rely on in terms of establishing a penalty. That is the case, but under the facts here, I think I appreciate what you're saying or what you're alleging is the operative fact that establishes that there was no due process because she didn't receive notice of disclosure to her ex-husband, but the board concluded and the agency argues that, firstly, there was unrefuted testimony that the deciding official would have reached the same result irrespective of that, would have still offered the penalty irrespective of the non-authorized use, and so an argument of harmless error is made. Why is that not sufficient? Because she was denied constitutional due process. The harmless error is the other side of the harmful error argument, but not the due process because if there's a denial of due process, then the merits of the case are not counted. The employee is entitled to due process for every aspect of it, and here... The deciding official, if we accept his testimony or her testimony, that irrespective of whether or not the unauthorized disclosure material was considered for a penalty, the penalty would have been the same even absent that. Your view is that that's not sufficient to satisfy the due process then because he says that he would have reached the same result no matter what, right? That's correct because the due process consideration is a separate consideration. A lot of the due process cases involve multiple allegations of misconduct and sustained allegations of misconduct, and so if the due process issue was obviated by the fact that there were other sustained issues of misconduct, then there would be very few of these cases. If you are right and this due process remedy assertion holds, what's the remedy? It's clear on the record that the agency would have gone the same way no matter what, so we issue an opinion saying due process was violated, okay, and the remedy is... Well, they already told us that if the alternative procedure was used and they had not considered it, that they would have reached the same result, so why did they have to do that again? Because the due process is separate from harmful procedural error. I mean, in this court has the agency have done it anyway, then a lot of these cases would not come to this point because the agency, in other cases, would have done it anyway. Now, in this case... But that's not... The board's decision on the due process question was completely separate from a harmful error analysis under procedural... Yes, yes it was. And the ALJ laid out each of the factors you're supposed to consider and the ALJ found, putting it that way, that this was not new and cumulative evidence and that she had an opportunity to respond and that that evidence didn't put any undue pressure on them. How do you get past those findings? The ALJ and the board had two different rationales. The ALJ found that it was not new and material information because she was provided with the agency record and there was information in the agency record from which she could have presumed or gleaned that this was an issue. Well, as a matter of evidence... Yeah, that's not the board's finding. The board's finding is that she herself raised... Right. No, I'm speaking to the ALJ's finding now. No, we're dealing with the board. All right. The board's finding was essentially that she gave herself notification because in her written response, she said in a couple of places, and I did not provide any information to my ex-husband or anyone else, and once she said, and I did not do this for personal gain. Now, the board took this to be a denial of an allegation. Well, it was not a denial because a denial is a reflexive verb. In order to have a denial, you have to have something to deny. There was nothing there to deny. The board kept using the term allegation. My question is, does the employee know that this is an issue in the case? No. She herself raises the issue. How is it that the employee doesn't know it's an issue in the case? Because she was making an argument. The charge was that she made text queries that were not explained in great detail why she believed they were related. This was part of that explanation. This would be, in effect, like dicta in a judicial decision. She made this comment, but the point she was making is that she believed that these queries were part of her official work. But if you make a comment in the course of a hearing, then the veracity of that comment puts your credibility at issue, right? But the credibility issue was whether she really believed that they were related to her work. And that's what the deciding official said. Nothing in the deciding official's testimony or in his decision has anything to do with credibility regarding whether she communicated any information to her ex-husband. That issue never came up. It never came up in the OPR report of investigation. Her ex-husband sent these two emails to the agency and accused her of just about everything under the sun, but not of communicating text information to him. OPR conducted an extensive investigation, 2,108 pages and five volumes. They never took a statement from him, but they interviewed him three times. And an OPR agent did a summary of their interviews with him. He never said that they... You're not addressing the question. What's the unfairness when she herself raises the issue of considering the issue to be in the case? Why is that unfair? The unfairness was that there was no link between what she did and what the deciding official did. He did not rely on that. You have to look at the deciding official's responsibility and what he did. She had no clue as to his thought processes. The fact that she said, I didn't convey information or share information, she had no way of knowing what he was thinking. And after the remand, the agency went through the record in great exhaustedness talking about phone calls that were made back and forth. The deciding official didn't rely on that. He didn't rely on her raising the issue. Who did she raise the issue with? She didn't raise it with a deciding official. She did not have a reasonable opportunity to rebut any specific allegations because the agency never made any specific allegations. If the agency had done what it should have done, if the deciding official really thought this is important, they should have rescinded the notice of adverse action, reissued it, put this charge in here, and put in specifications saying, based on this, we believe you did this. She then would have answered that in great detail just the way she answered everything else. This statement that she made in here was an off-the-cuff statement to emphasize her belief that she made these text inquiries for legitimate official purposes. You cannot presume from making text inquiries that, therefore, there was a sharing of information with anyone else. That's not a logical assumption. It's a possibility, but it is not a necessity. Sharing information is a much more serious offense than making text inquiries for personal purposes, and it is not a lesser-included offense. So her remark, just as she said in there, she also said, I did not make these inquiries for personal gain. That was the subject of the investigation. She was never charged with that. So, based on that, then, was it fair if the deciding official said, and I also believe you did this for personal gain? I mean, this just opens up a whole can of worms because it shifts the notice burden. It's a can of worms that she opened up, and what you're saying is the employee can say anything that he or she wants to at the agency level and never be called to account for that. No. If an employee makes a confession of something, just as in a criminal law, a confession, but if an employee says, I didn't do X, Y, and Z, and she's not charged with that, the judge would not then say, oh, we think you did X, Y, and Z, because that completely obviates the whole due process procedure. The agency doesn't have to charge anything, the agency doesn't have to prove anything, but the agency, in effect, gets the benefit of a conviction without having had to put on any case and without any notice to the employee. Now, much was made of the fact that she gave a detailed written response, which she did, and had she been charged with communicating this information to her ex-husband or anyone else, she would have given a detailed written response to that, but she wasn't charged with that. She didn't have notice of that, there was no communication of that, there was no meeting of the minds on that, so she didn't give a detailed defense because there was nothing to defend. Okay, we're into your rebuttal in one or two minutes. I'll save that and we'll hear from the Governor. May it please the Court. Ms. Wilson contends that just because she wasn't officially charged with disclosing text that a due process violation has occurred. We admit that the agency did not include a stated aggravating factor of disclosure of text information in the Notice of Proposed Removal, but case law. This Court has made clear in stone and in words that not all instances in which certain information relied upon by the agency is not specifically included in the Notice of Proposed Removal necessarily results in a due process violation. It's only when the deciding official considers new and material information. The evidence at issue here was information supporting the misuse of text charge. So the essence of the misuse of text charge was the reason why Ms. Wilson was misusing text. Here the overwhelming evidence demonstrated that Ms. Wilson was misusing text because she made these text queries at the request of her ex-husband. But that wouldn't be sufficient. I mean, the mere fact that they gave her the five volumes doesn't put her on notice that it's an issue, right? It does in this circumstance because... Why are you arguing that? I'm sorry? Why are you arguing that? That's a very difficult row to hoe. I mean, that's not what the board said. The board said she was on notice because she raised the issue herself. Right. She was on notice... Not because she had five volumes of evidence that she could have sifted through and found an allegation about that. I agree with Your Honor in the sense that she was on note. The way I read the board's decision was that she gave herself notice based on the overwhelming evidence in the record demonstrating that she had run the text queries at the request of her ex-husband and a natural conclusion to be drawn from the deciding official would be if she made the searches at the request of her ex-husband that she would be sharing that information. And so Ms. Wilson addressed that evidence in her responses to the notice of proposed removal and the evidence that she reviewed and significantly denied sharing the text information with her ex-husband. And she did so in the context of explaining her side of the story as to why she had conducted each of the text inquiries at issue. And so that the deciding official considered that she disclosed text information was just a natural inference to be drawn from the overwhelming evidence demonstrating that she ran the searches at the request of her ex-husband. So you don't deny that the deciding official found it to be important that she shared this information with her ex-husband for purposes of determining the penalty? Well, with respect to the misuse of text charge, he did consider it as an aggravating factor. However, he did testify, and this goes to the third stone factor, which is whether the information at issue was of the type that would unduly influence the deciding official to rule in a particular manner. Here, as the administrative judge found, the deciding official unequivocally testified that he would have removed Ms. Wilson based upon the lack, the substantiated lack of candor in the charge and the failure to cooperate charges alone because those were the more serious charges. And more importantly, those charges had nothing to do with the information relied upon by the deciding official that she had disclosed text information with her ex-husband. So the third stone factor demonstrates that no due process violation has occurred. Addressing the second stone factor, which is whether Ms. Wilson knew of the information and had an opportunity to respond, she had the opportunity to respond. She presented all the information that was relied upon by the deciding official. She gave her side of the story, not once, but twice, with a 31-page written response and an hour-and-a-half-long oral response. She addressed that overwhelming evidence demonstrating that she had run text queries at the request of her ex-husband, and she said, no, I didn't. These are legitimate text queries I ran. I did it for investigative purposes. And the deciding official and the administrative judge both found her not to be credible and that she had run the searches on behalf of her ex-husband. So why wasn't she just charged with that? I don't know. She was charged with misuse of text, and I don't know whether the agency felt that that was a more solid charge, but the fact that the deciding official considered the natural conclusion to be drawn from the fact that she had ran improper searches on behalf of her ex-husband is not a due process violation. But as I understand it, and correct me if I'm mistaken about this, they didn't consider this to be part of the charge. They considered it only in connection with the penalty, right? That's right. And in Ward, this Court held that the Stone analysis applies. They also extended the Stone analysis to situations in which the agency considers aggravating factors that were not specifically included in the notice of proposed removal as opposed to consideration of whether a charge is substantiated or not. So on the first factor of Stone, new material, you don't dispute that it was material. By definition, the deciding official thought it was material. That's why she relied on it, right? So the first Stone factor, actually, the overall three-factor test is to determine whether the information was new and material. The first Stone factor addresses whether the information at issue was new or whether it was cumulative, and the administrative judge here found that the information at issue was  And that's why she was not putting the notice of proposed removal, which was provided to Ms. Wilson. Notably, Ms. Wilson does not identify any piece of evidence that she was not provided with that was considered by the deciding official. And the deciding official testified that he relied on the investigative file in making his determination that he didn't find credible her explanations regarding her text inquiries were done for investigative purposes. But isn't there a distinction? That's what I'm confused here. I mean, they're talking about whether or not she did the improper searches, but that's separate and distinct, is it not, from her disclosure of that information to her husband, right? Whether she disclosed that information with her ex-husband, I think in the factual circumstances of this case, it goes part and parcel with the nature of the charge because either she did or did not run these searches at the request or on behalf of her ex-husband. So that was the agency's side of the story. Her side of the story was, no, I did it for investigative purposes. Well, the agency determined, and it was affirmed by the board, that she improperly ran the searches at the request of her ex-husband. And the natural conclusion to be drawn is that if she had run searches for her ex-husband Why did they charge her with that? The natural conclusion would ordinarily be, if that is in fact the natural conclusion, then they would have charged her with that as well. I don't know why the agency didn't charge her with that, but I don't think it's improper for the deciding official to have considered that as an aggravating factor as part of the misuse of text charge. This court has no further questions with respect to request it to affirm the board's decision. Sir, you have five minutes left. A critical difference in this case from all the other new and material information cases that I have researched is that in all the other cases, the information they're talking about is some kind of hard, real information, documentation of prior discipline, conversations with other people. There's no question that something occurred. The problem in this case is the new information was the speculation of the deciding official. He had an ex-parte communication with himself, in effect, because he decided That's my real question. In terms of the threshold questions of if this constitutes an ex-parte communication, does this really constitute an ex-parte communication for purposes of the Stone analysis? I mean, while the Stone analysis may be helpful here, there is a threshold question. Usually, we're talking about information that comes from a third party or that the official knew from some prior activity. This is not a question of how the official views the overall record before him. I agree, and I say ex-parte communication because of how the analysis has developed in the previous cases. This is different. The real question in this case is if it's a denial of due process for deciding officials to use ex-parte information from other sources, is it not even worse if it's just something that the deciding official made up in his head? Because he exceeded his authority. He became Well, what's the evidence that he made it up in his head? I mean, there is evidence in these five volumes that this is what happened, that she did it at the request of her ex-husband, given the information. There was never any question that she did this based on tips from her ex-husband. That was never a disputed issue. Her argument was that notwithstanding that, it was still part of her official duties because it involved potential criminal information. She never said that she didn't get tips from her ex-husband. In fact, this became an issue at the hearing because, essentially, you can get tips from everywhere. The decision was that, no, even though she got these tips from her ex-husband, she had more of a personal interest in it than a law enforcement interest. That was the credibility issue. It was never raised in the investigation, in the proposed notice, in the final notice, that she communicated any text information to her ex-husband. In fact, if you look at Exhibit 3 to the OPR report, which is the summation of the interviews with him, he said twice in there that he asked her, well, what did she find? She said, I can't tell you that. Don't go there. He never alleged that, and they never investigated her for that. The source of the investigation was that she did it for private gain. And the OPR did a 43-page report on the entire investigation, and not once in there is there any mention of her communicating information to her ex-husband. Under the federal rules of civil procedure, my recollection is, and I can't cite you the rule, that there's a specific rule that says even if something isn't alleged in the complaint, if the party is treated as an issue, it will be deemed to be properly raised. And how is that different from this? There's a rule about party admissions, and this was not an admission. And this was not treated as an issue. This was an aside. It was add-on. This was not something where there was any joining of the minds or a focus. She made this as an emphatic statement, part of her statement, that she believed that the text inquiries that she made, that she admittedly made, and that she made based on tips from her ex-husband, was still part of her official duties because they involved some issues of possible illegal travel or money laundering or that type of thing. Now, let's suppose they had charged her with sharing text information with her ex-husband. I think from that charge, you could arguably conclude that therefore the purpose of making the text inquiries was improper, if in fact she shared it. But it doesn't go the other way. Making text inquiries for personal reasons does not necessarily implicate sharing information with an outside source. The deciding official recognized that because he said, this is much more serious in my mind than just making improper text inquiries. And that issue was never joined. She didn't make a denial because there was nothing to deny. In the cases where there have been new ex-party communications and information, the question has been raised as whether the employee knew of the improper communications and whether the employee had a chance to respond to it. And in the cases where it's been held that there was no due process violation, the deciding official gave the employee copies of the communications and copies of the information and kept the case open so that they could respond. And I've had that happen in cases where there'd be a subsequent communication and the deciding official would say, well, I found out afterwards, thus and so, here's what it's based on. I'm sorry. The time has run out. A final thought? Pardon? A final thought? That was it. Okay. Thank you. Thank both counsel in the cases submitted. That concludes our proceedings for this morning. All rise.